UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VIRGINIA C. RODRIQUEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:11-CV-2129-B |
| § | |
| WAL-MART STORES, INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION & ORDER

Before the Court is a Motion for Summary Judgment (doc. 13), filed on August 10, 2012 by Defendant Wal-Mart Stores, Inc., doing business as Sam's Club. For the reasons that follow, the Court **GRANTS** Defendant's Motion.

### I.

### BACKGROUND

Plaintiff Virginia C. Rodriquez, a Hispanic female over the age of forty, is a former employee of Defendant Wal-Mart Stores, Inc., doing business as Sam's Club. She was hired in December 1991 as an hourly associate at Sam's Club Store No. 6336 and received several promotions during her employment. Doc. 15-2, App. at 1 (Rodriquez Aff.). In 2007 and 2008, Plaintiff ultimately was promoted to two managerial positions. *Id.* at 2.

On October 8, 2009, Plaintiff received disciplinary action for violating Defendant's Associate Purchase Policy. Doc. 15-2, App. at 2 (Rodriquez Aff.). The Associate Purchase Policy governs the circumstances under which employees may purchase items at Sam's Club. Doc. 13-3, App. at 160

(Associate Purchase Policy). It prevents managers from marking down the costs of items that they intend to purchase and prevents them from purchasing items reduced for a quick sale. *Id.* A violation of the policy could result in termination. Doc. 13-3, App. at 36 (Rodriquez Dep.). On October 8, 2009, Plaintiff instructed an associate to use Plaintiff's password to mark down an item from $47.00 to $20.00 for Plaintiff's purchase, despite the fact that Plaintiff was not permitted to purchase the item at that time and despite the fact that the item was not on sale for $20.00. Doc. 13-3, App. at 123 (Coaching For Improvement Form). Plaintiff also did not complete a log entry for use of her password to override the purchase price, which she was required to do so that such transactions could be audited. Doc. 13-3, App. at 146 (Reed Aff.). Moreover, Plaintiff allowed the associate to use Plaintiff's password to markdown a second item for the associate's purchase. Another employee witnessed the transaction and reported the incident. Doc. 13-3, App. at 123.

Once the incident was reported and investigated, Plaintiff admitted to her wrongdoing. Doc. 15-2, App. at 2. Plaintiff was subject to Defendant's "progressive discipline policy," or "Coaching for Improvement Policy." The discipline policy offers four progressive levels of discipline: (1) verbal coaching, (2) written coaching, (3) Decision-Making Day, and (4) termination. Doc. 13-3 App. at 97-98 (Coaching For Improvement Policy). The level of severity of the employee's conduct determines which level of discipline that the employee will be subject to. *Id.* at 97. Plaintiff's violation of the Associate Purchase Policy was recommended to be a "gross violation," which subjected her to immediate termination. Doc. 13-3, App. at 146 (Reed Aff). Market Human Resource Manager Byron Lindemann and Regional Human Resource Manager Felicia Collins-Wylie both recommended Plaintiff's termination. *Id.* However, Store Manager Jody Reed and Market Manager John Bernheim decided to give Plaintiff a second shot by placing her in the "Decision-Making Day Coaching"

disciplinary level, rather than termination. *Id.* Decision-Making Day status required employee coaching and the development of an action plan. Doc. 13-3, App. at 98 (Coaching For Improvement Policy). All disciplinary statuses remain active for one year, and any subsequent violation of any employee policy while the employee is on active Decision-Making Day status results in the employee's termination. *Id.* Thus, Plaintiff was warned that any misconduct by her during the year of her disciplinary status would result in her termination. Doc. 13-3, App. at 147 (Reed Aff).

Approximately nine months after Plaintiff was placed on disciplinary status, she was involved in a second incident. On July 6, 2010, Plaintiff viewed pictures of co-workers at a July 4th party, despite the fact that those individuals had called in sick on that day. Plaintiff posted information on employee Loria Robertson's facebook page publicly chastising the employees by name for falsifying reasons for their work absence. Doc. 15-2, App. at 4-5. Robertson reported the incident to Bernheim, who requested that Market Human Resource Manager Lisa Richards investigate the complaint because Reed was on vacation. Richards determined that Plaintiff violated Defendant's Social Media Policy by publicly chastising employees under her supervision, rather than waiting for the associates to return to work to discuss her attendance concerns. Doc. 13-3, App. at 138 (Richards' Aff.). The Social Media Policy was in place to avoid public comment that adversely affects employees or job performance. *Id.* at 151 (Social Media Policy). The Policy includes, *inter alia*:

> [Y]ou are more likely to resolve work-related complaints by speaking directly with your co-workers or by utilizing our Open Door Policy than by posting complaints to a social media outlet. Nevertheless, if you decide to post complaints or criticism, avoid doing so in a way that is unprofessional, insulting, embarrassing, untrue, [or] harmful . . . .

*Id.* Richards learned that Plaintiff was on active Decision-Making Day status at the time of the Social Media Policy breach and concluded that this new violation subjected Plaintiff to termination, as the

next level of disciplinary status. *Id.* at 138-39 (Richards Aff.). Richards made the ultimate decision to terminate Plaintiff and did so in the presence of Reed upon his return from vacation. *Id.* After her termination, Plaintiff approached Reed to discuss her belief that the facebook incident was reported only because another employee disliked her for personal and professional reasons. *Id.* at 149 (Reed Aff.). Plaintiff's position was filled by Christine Beck, a non-Hispanic woman aged 39. Doc. 15-2, App. at 7.

On February 14, 2011, Plaintiff filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division and with the Equal Employment Opportunity Commission, alleging age and national origin discrimination and retaliation. Doc. 13-3, App. at 131 (Charge). The Texas Commission determined that the Charge of Discrimination did not establish any discrimination or retaliation. *Id.* at 132-35 (Dismissal & Notice, Letter). Consequently, Plaintiff filed her Original Petition in state court on July 25, 2011. Doc. 1-1, App. at 3. She alleges a cause of action against Defendant under the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §§ 21.001-21.556, for discrimination based on age and national origin and for retaliation. *Id.* at 4. Plaintiff identifies her age group as over-forty and her national origin as "Hispanic." *Id.* at 2. She seeks an injunction, reinstatement of employment, lost wages, compensatory and punitive damages (including future losses and various damages for emotional suffering), fees, costs, and prejudgment interest. *Id.* at 3.

Defendant removed the case to federal court on August 24, 2011 on the basis of diversity. Doc. 1, Notice. On August 10, 2012, Defendant filed a Motion for Summary Judgment. Doc. 13. The Motion has been fully briefed and is ripe for review. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

## II.

## LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding

the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

A.  *Objections to Evidence*

Each party offers multiple objections to the opposing party's summary judgment evidence. The Court reviews each objection, below.

i.  <u>Plaintiff's Objections</u>

Plaintiff objects to paragraph 3 of Lisa Richards' Affidavit (doc. 13-3, App. at 136-40). The Court denies the objection as moot given that the Court does not rely on that evidence to form the basis of its decision. Plaintiff next objects to paragraph 4 of the affidavit because it is hearsay. Plaintiff has not identified the alleged hearsay, and the Court finds there is none. Moreover, Plaintiff has admitted the allegation in the first sentence of the paragraph in her own affidavit, so the Court need only rely on Plaintiff's admission and not on the alleged hearsay. Plaintiff next objects to the third sentence in paragraph 5 to the affidavit; the second sentence of paragraph 6; the last sentence of

paragraph 7; and paragraph 11. The Court denies those objections as moot because it does not rely on that evidence. Finally, Plaintiff objects to the last sentence of paragraph 9 on the basis that Plaintiff disagrees with Richards' opinions expressed therein, i.e, whether the facebook post adversely affected the employees and whether the conduct was congruent with the employer's policies. The Court denies the objection because it is not based on any legal ground.

Plaintiff also objects to portions of the Reed Affidavit (doc. 13-3, App. at 141-50). The Court denies as moot her objection to paragraphs 10 and 11 because it does not rely on that evidence. The Court denies the objections to paragraphs 17, 18, 23, and 25 as hearsay because those paragraphs contain no out-of-court statements and the objections are not sufficiently particular.

ii.  Defendant's Objections

Defendant objects first to Plaintiff's Affidavit (doc. 15-2, App. 1-8). Defendant objects to the last sentence in paragraph 4 to the affidavit as self-serving, inconsistent, and based on inadmissible hearsay. The Court denies the objection, because the paragraph contains no out-of-court statements, and Defendant appears to object based on its perceived credibility of the assertion, not its admissibility. Defendant also objects to paragraphs 10 and 11 as they relate to another of Defendant's employees, Genevieve Luna, because the statements therein are not based upon Plaintiff's personal knowledge, lack foundation, and are conclusory. The Court denies the objection as lacking foundation.

Second, Defendant objects to a one-page document submitted by Plaintiff as summary judgment evidence (doc. 15-2, App. at 25). The document is not named, and it is unclear what the document is meant to represent, who created, when it was created, or where it is from. It contains a section entitled "Footnote" and states "Message Left"; the message states that it is from "Steve from

TALX" regarding additional details of Plaintiff's termination and proffers the reason that Plaintiff was terminated. Defendant objects to admission of the document as not authenticated, and inadmissible as double-hearsay. The Court agrees and sustains the objection.

B.   *Discrimination Claims*

Plaintiff raises two discrimination claims under the TCHRA. Texas courts apply analogous federal law to claims under the TCHRA. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)(per curiam); *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 208 (Tex. App.—Dallas 2005, no pet.). Plaintiff's discrimination claims are therefore subject to the *McDonnell Douglas* burden-shifting analysis.[1] *Jinks v. Advanced Prot. Sys., Inc.*, 162 F. Supp. 2d 542, 545-46 (N.D. Tex. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Stewart*, 156 S.W.3d at 208. Under *McDonnell Douglas*, a plaintiff must initially present evidence of a prima facie case of discrimination. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003); *Stewart*, 156 S.W.3d at 208. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Manning*, 332 F.3d at 881; *Stewart*, 156 S.W.3d at 208. The defendant's burden, however, is only one of "production, not persuasion, and involves no credibility assessment." *Jinks*, 162 F. Supp. 2d at 546. If the defendant meets its burden, the plaintiff must offer evidence either that (1) the employer's proffered reason for termination is not true, but is instead a pretext for discrimination or (2) that the employer's excuse, while true, is only one of the reasons for its conduct and that the discrimination was a motivating factor. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

---

[1] Plaintiff's discrimination claims are based on circumstantial evidence only, and thus are deemed indirect. The parties agree that the *McDonnell Douglas* burden-shifting framework applies to the case.

Defendant admits that Plaintiff has established a prima facie case for both age and national origin discrimination in that Plaintiff was qualified for her job, is a member of both protected classes, was terminated, and was replaced by a younger, non-Hispanic woman. The only remaining issues are therefore whether Defendant can offer a legitimate, nondiscriminatory reason for Plaintiff's termination and whether Plaintiff can prove that the proffered reason is pretext.

 i. Legitimate, Nondiscriminatory Reason

Defendant states that its legitimate, nondiscriminatory reason for terminating Plaintiff is that she committed a "gross violation" of Defendant's Associate Purchase Policy and subsequently violated Defendant's Social Media Policy. Defendant submits Plaintiff's deposition transcript, the employment policies, Plaintiff's October 2009 Coaching For Improvement form and Action Plan, Reed's Affidavit, Richards' Affidavit, emails, Plaintiff's Exit Interview form, and other documents as summary judgment evidence. The summary judgment evidence shows, and Plaintiff does not dispute, that Plaintiff violated the Associate Purchase Policy when she purchased an item that she was not permitted to purchase at a price lower than she was authorized to make the purchase, used her managerial authority to draw upon the assistance of an employee in the wrongful conduct, concealed her conduct by not logging it, and assisted the employee in making a similar unauthorized purchase. Doc. 13-3, App. at 123-29 (Coaching for Improvement Form, Plaintiff's Letters). Plaintiff admitted to her wrongdoing. Doc. 15-2, App. at 2 (Rodriquez Aff.). Plaintiff also admitted that this conduct alone was enough to terminate her. Doc. 13-3, App. at 36 (Rodriquez Dep.).

After receiving Decision-Day Making coaching, the summary judgment evidence shows that Plaintiff publicly–rather than privately–chastised employees under her management on a social media website. Doc. 15-2, App. at 4-5 (Rodriquez Aff.). Richards determined that this conduct violated

Defendant's Social Media Policy and, given that Plaintiff was currently under the highest level of disciplinary status for the Associate Purchase Policy violation, terminated Plaintiff as the next level of discipline under Defendant's progressive disciplinary policy. Doc. 13-3, App. at 138 (Richards Aff.). Defendant has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff in that she violated company policy.

  ii.  <u>Pretext</u>

Plaintiff contends that the Social Media Policy violation was mere pretext for her termination.[2] In support, she submits as summary judgment evidence her own affidavit, her employment records, letters, Supplement to the Social Media Policy, and other documents.

In considering whether an employer's reason for an adverse employment action is a pretext for discrimination, the question is whether the employer's reason, even if incorrect, was the real reason for its actions. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Plaintiff primarily supports her assertion of pretext through her disparate treatment argument. In her affidavit, Plaintiff explains ways in which other employees at Sam's Club violated its various policies, including the Associate Purchase Policy and the attendance policy, but were not disciplined in the way that Plaintiff was. Doc. 15-1, Resp. at 13. In considering a disparate treatment argument involving separate incidents of misconduct, only employees whose circumstances and misconduct are "nearly identical" to the plaintiff's may be considered similarly situated and, thus, used as comparators. *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004). Courts are to consider not only the seriousness of the misconduct, but the overall circumstances in each case. *Id.* The employees that

---

[2]Plaintiff argues only that the proffered reason for her termination is pretext; she does not argue that her age or national origin was a motivating factor in her termination.

Plaintiff points to are not similarly situated to Plaintiff in that none committed similar violations under similar fact scenarios, some of the violations were not of the same level of severity as Plaintiff's violations, none of the employees are alleged to have been under the purview of Decision-Day Making coaching, and Plaintiff has not adequately shown that some of the employees actually violated the policies and how they were disciplined. Furthermore, one of these employees is Hispanic, which undercuts Plaintiff's national-origin discrimination claim.

Plaintiff also disputes whether her conduct should be deemed to violate the Social Media Policy. Doc. 15-1, Resp. at 15. Because she believes that her conduct should not constitute a violation of the Social Media Policy, she asserts that reliance on the policy to facilitate her termination is pretext. Plaintiff admitted that a second violation of company policy would subject her to termination. Doc. 13-3, App. at 40 (Rodriquez Dep.). She also admitted to the facts that form the basis of the Social Media Policy violation. In cases where the employer has conducted an investigation into possible misconduct by the employee, courts are not concerned with whether the employee actually did what was alleged, but instead must determine whether the employer reasonably believed the employee took the alleged action. *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1993). Moreover, the Texas Supreme Court has specifically held that evidence that an investigation was "imperfect, incomplete, or arrived at possibly the wrong conclusion" is insufficient to prove discrimination. *Canchola*, 121 S.W.3d at 740; *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489-90 (5th Cir. 2004). As the underlying facts are not disputed, this Court will not disturb Defendant's conclusion that Plaintiff violated its Social Media Policy.

Next, Plaintiff argues that she never received a sub-par performance review during her twenty-year employment with Defendant. Doc. 15-1, Resp. at 32. Plaintiff's argument is irrelevant,

because her termination was not related to her performance but to violation of company policy. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 225 (5th Cir. 2001).

Plaintiff fourth contends that Reed made racist comments against Mexicans and African Americans, which she explains demonstrates Reed's discriminatory animus. Doc. 15-1, Resp. at 24, 28. Comments may prove discrimination where they are related to the plaintiff's protected class, approximate in time to the termination, made by an individual with authority over the employment decision, and related to the employment decision. *See Haas v. Advo Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996)). The uncontroverted evidence shows that Reed did not make the decision to terminate Plaintiff, so his alleged discriminatory comments are largely irrelevant.[3] Doc. 13-3, App. at 138 (Richards Aff.). Further, Plaintiff only recalls one statement related to Hispanics, made against Reed's Mexican brother-in-law, and two comments about specific African-American employees at the store. Doc. 15-2, App. at 6-7. Neither of these comments were remotely, topically related to her termination and the comments about African-Americans do not involve Plaintiff's protected class. Moreover, Plaintiff cannot remember the time frame of these comments and therefore cannot establish their temporal proximity to her termination. Doc. 13-3, App. at 46-47 (Rodriquez Dep.). The Court therefore concludes that Plaintiff has not met her burden of showing that the stray comments made by Reed establish pretext.

Finally, Plaintiff briefly states that Defendant provided shifting explanations for her

---

[3] Plaintiff's Response brief states that Reed partially made the decision to terminate her. Doc. 15-1, Resp. at 29. However, Plaintiff fails to point the Court to any actual evidence to contradict the evidence provided by Defendant showing that Richards was the only decision maker.

termination. She argues, in full: "First the Defendant told the TWCCRD it was identified, and Rodriquez posted the pictures. All of that is false." Doc. 15-1, Resp. at 33. Plaintiff's statement is unclear to the Court. Presumably, Plaintiff is arguing that the proffered reason that she violated the Social Media Policy is pretext, because she was terminated for posting public criticism of her employees, but the unnamed document she offers as summary judgment evidence says she was terminated for posting criticism of her employees *and* posting pictures. Doc. 15-2, App. at 25. The parties agree that Plaintiff never posted pictures. As explained above, the Court sustained Defendant's objection to strike the document; without the document, Plaintiff submits no other evidence of shifting explanations. Even if the Court had not stricken the document, however, it does not establish conflicting reasons for Plaintiff's termination. The Court therefore rejects Plaintiff's argument and concludes that Plaintiff has not provided sufficient argument or evidence demonstrating that the policy violations were mere pretext for Plaintiff's termination.

Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's two discrimination claims.

C.   *Retaliation Claim*

To state a prima facie claim of retaliation under the TCHRA, a plaintiff must show the following: (1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). "Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.–Houston [14th

dist.] 2007, pet. denied). Retaliation claims under the TCHRA also follow the *McDonnell Douglas* burden-shifting scheme. *Stewart*, 156 S.W.3d at 208. Defendant disputes that it retaliated against Plaintiff and alleges that Plaintiff cannot show she engaged in a protected activity or the existence of a causal link between the protected activity and her termination.

Plaintiff alleges that she engaged in the protected activity of attempting to utilize Defendant's Open Door policy to make an internal complaint to Bernheim about Reed in 2003 and to complain about gossip after her Decision-Day Coaching in 2009. Doc. 15-1, Resp. at 30. Plaintiff submits her affidavit and her 2003 letter to Bernheim as summary judgment evidence showing that she made internal complaints. *Id.*; doc. 15-2, App. at 2-4 (Rodriquez Aff.). Importantly, neither internal complaint involved allegations of discrimination. The 2003 complaint stated that Reed was acting unfairly to Plaintiff because he blamed her for keeping old meat on the shelves, even though she allegedly was not responsible for removing it. Doc. 15-2, App. at 3-4 (Rodriquez Aff.). The 2009 complaint stated that Plaintiff was concerned that other employees knew about her Decision-Day Making coaching for breach of the Associate Purchase Policy, which Plaintiff felt should have been kept confidential. *Id.* at 2-3. Because Plaintiff did not complain of any discrimination, her internal complaints are not protected activities.

Plaintiff further cannot establish a causal link between the internal complaints and her termination. The Fifth Circuit has held that the "causal link" standard is not as stringent as the "but for" standard. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Plaintiff asserts that "the temporal proximity between these events by itself suffices to establish the prima facie case." Doc. 15-1, Resp. at 30-31. Plaintiff makes no other argument supporting the causal link. The first alleged protected activity occurred in 2003, over seven years before Plaintiff's termination. The long

amount of time lapsing between the two events falls far short of the temporal proximity standard. The second event occurred in October 2009, immediately after Plaintiff's first disciplinary action, about nine months prior to the termination. Again, nine months is an extended period of time which does not establish temporal proximity and an inference of a causal link. Accordingly, the Court concludes that Plaintiff has failed to demonstrate a prima facie case of retaliation by Defendant.

Even if Plaintiff could establish a prima facie case of retaliation, her retaliation claim would still fail for the same reasons as her discrimination claims failed: there is no evidence of pretext. Indeed, it is more difficult to prove a retaliation claim under the TCHRA than a discrimination claim, because retaliation requires proof of but-for causation, while discrimination only requires proof that the protected trait was a motivating factor in the decision. *Pineda*, 360 F.3d at 488-89; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).

Therefore, the Court **GRANTS** summary judgment to Defendant on Plaintiff's retaliation claim.

## IV.
## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (doc. 13) is hereby **GRANTED**.

**SO ORDERED.**

**SIGNED: January 9, 2013.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE